UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TANITA APRIL B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C20-159-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by discounting her testimony and in formulating her residual functional capacity ("RFC"). (Dkt. # 8.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND

Plaintiff was born in 1962, has a high school education and vocational training from Pima Medical School, and has worked as a caregiver, health care provider, medical assistant, phlebotomist, and stock associate. AR at 33, 180, 186. Plaintiff was last gainfully employed in

ORDER - 1

2013. *Id* at 181. Plaintiff alleges disability as of December 31, 2015.[1] *Id.* at 33. After conducting a hearing on August 23, 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-23. In pertinent part, the ALJ found Plaintiff's severe impairments of diabetes mellitus and peripheral neuropathy, obesity, and right knee osteoarthritis left her with the RFC to perform light work as defined in 20 CFR 404.1567(b) with frequent handling and fingering and occasional stooping, squatting, crouching, crawling, and kneeling. *Id.* at 17, 19-20. She was also limited to occasional climbing of ramps and stairs, and never climbing ropes, ladders, and scaffolds. *Id.* at 19-20. She would be off task 10% of the time and would have seven unexcused absences per year. *Id.* at 20. Lastly, Plaintiff was capable of engaging in mental activities equivalent to that required in jobs performed at the Specific Vocational Preparation ("SVP") level of three. *Id.* at 19.

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[1] Plaintiff amended her original onset date of November 30, 2012 at the ALJ hearing. AR at 32. The hearing transcript states Plaintiff amended her alleged onset date to December 21, 2015 (AR at 33), however, the ALJ's decision states Plaintiff amended her alleged onset date to December 31, 2015 (*id.* at 15). This appears to be a typographical error and does not impact the outcome of this matter.

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in Discounting Plaintiff's Testimony

Plaintiff testified that her impairments prevent her from working. AR at 20. Specifically, Plaintiff reported stabbing pain and numbness of her fingers and feet, cramping and constant pain in her hands, and problems with her hands shaking. *Id.* at 41, 48, 49. She reported dropping objects constantly, staying in bed most of the time, and experiencing a worsening of her symptoms in 2015. *Id.* at 41, 42, 48. Plaintiff also reported that taking medication made her drowsy and unable to function, and that she monitored her blood sugar levels three times a day. *Id.* at 41, 44. Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ found the objective findings in the record were inconsistent with Plaintiff's allegations. AR at 21. The ALJ found that despite Plaintiff's claims of being bedridden due to her symptoms, the record showed she usually presented well, in no acute distress, and with no apparent abnormalities. *Id.* (citing *id.* at 244 (no acute distress, cooperative, pleasant), 476 (alert, cooperative, normal affect and range, appropriate), 495 (same)). The ALJ also found no corroboration of Plaintiff's claim that medication caused drowsiness or prevented her from functioning. *Id.* The ALJ further found treatment and examination records documented intact physical functioning, including, *inter alia*, intact extremity strength, intact coordination, normal reflexes, no involuntary movements or tremors, normal gait, and normal sensation. *Id.* (citing *id.* at 464-65, 476, 495, 511, 540). The ALJ noted that although an examination found subjective numbness in her fingers, the findings were otherwise unremarkable. *Id.* (citing *id.* at 280-81). The ALJ also noted that the record showed she received only limited treatment for her alleged knee condition and x-rays showed she had only mild osteoarthritis. *Id.* (citing *id.* at 543). The ALJ concluded these findings did not substantiate Plaintiff's claims of disabling limitations. *Id.*

Plaintiff first asserts she did not testify that she was bedridden or in bed "much of the time." (Dkt. # 8 at 5.) However, Plaintiff testified that due to her pain, she did not want to get out of bed and "stay[s] in bed pretty much all the time now." AR at 41. The Court finds the ALJ's interpretation of Plaintiff's testimony regarding her time spent in bed reasonable.

Plaintiff next asserts her testimony concerned pain, not loss of strength or ability to move, and that pain is subjective and cannot be objectively measured. (Dkt. # 8 at 5.) The

ORDER - 4

Commissioner argues the ALJ could reasonably find the record demonstrates Plaintiff has normal sensation and neurological functioning that contradict the severity of her pain allegations. (Dkt. # 9 at 4.)

Here, Plaintiff testified that she had numbness in her fingers and feet, that walking was extremely painful, and that her pain level was "ten and above." AR at 41. Although pain is subjective, Plaintiff testified that it caused the above described limitations. The ALJ could reasonably find the objective evidence did not reflect that level of pain or severity of impairments, and that instead, Plaintiff typically appeared in no acute distress and had grossly normal physical functioning, including normal gait and intact extremity strength. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). The ALJ's interpretation of the objective findings was reasonable, and, as discussed below, this was not the only reason the ALJ relied on to discount Plaintiff's testimony. Although other interpretations of the record are possible, the Court must uphold the ALJ's rational interpretation. *See Id.* at 680-81 (when the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational).

The ALJ also found that despite records indicating Plaintiff's impairments improve with treatment (AR at 247), Plaintiff was non-compliant with treatment. *Id.* at 22 (citing, *e.g.*, *id.* 252, 255, 494, 503). The ALJ found this suggested her impairments are not as severe or limiting as she asserts. *Id.* The ALJ also noted that improvement with treatment, and examinations finding no significant abnormalities, did not support Plaintiff's claim that her symptoms worsened after her alleged onset date. *Id.* at 21. An "unexplained or inadequately explained failure" to seek treatment or follow prescribed treatment can be a valid reason to discount a claimant's

testimony, but an ALJ must consider a claimant's proffered reasons. *Trevizo*, 871 F.3d at 679-80; *see also* SSR 16-3p, 2017 WL 5180304 at *9 (S.S.A. 2017) ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"). A claimant's failure to follow treatment recommendations implies her "complaint [is] unjustified or exaggerated" because "a person's normal reaction is to seek relief from pain." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Plaintiff did not proffer any reason for her failure to comply with treatment. The ALJ could reasonably infer that Plaintiff's impairments are not as severe as she alleges based on her non-compliance with treatment. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). Failure to follow recommended treatment was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's testimony.

The ALJ also found Plaintiff's self-reported activities undermined her claims of disability. AR at 22. In support of this finding, the ALJ cites Plaintiff's reports of being too busy to take medication (*id.* at 255), being in the process of trying to start a food truck (*id.* at 269), doing a lot of walking (*id.* at 494), and that she takes care of her two grandchildren that live with her (*id.* at 36[2]). *Id.* at 22. The ALJ found these activities were inconsistent with the severity of her claims and required physical abilities that exceed her alleged limitations. *Id.* Plaintiff also does not challenge this reason for discounting her testimony. Conflict with Plaintiff's activities was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's testimony. *See Orn*, 495 F.3d at 639 (ALJ may discount claimant's testimony based on activities

---

[2] The Court notes Plaintiff testified that both she and her husband take care of the grandchildren, but that she takes care of them by herself when her husband is at work which can be for up to six hours a day. AR at 36-37.

that contradict her testimony). Because Plaintiff has not shown the existence of harmful legal error in the ALJ's assessment of her testimony, the Court affirms this portion of the ALJ's decision.

### B. The ALJ Erred in Formulating Plaintiff's RFC

An RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200(c). It is an administrative decision as to the most a plaintiff can do, despite her limitations. SSR 96-8p. The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," e.g., eight hours a day, five days a week. *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96-8p.

The ALJ found Plaintiff had the RFC to perform light work with additional limitations. Plaintiff argues the ALJ erred in formulating her RFC because the ALJ: (1) failed to include a limitation for Plaintiff's numbness; (2) failed to explain why a limitation to being off task 10% of the time was appropriate; (3) failed to explain why Plaintiff would be absent from work seven days over the course of a year; and (4) failed to explain why Plaintiff could engage in mental activity equivalent to that required in jobs performed at the SVP-3 level. (Dkt. # 8 at 6-7.)

As discussed above, the ALJ did not err in discounting Plaintiff's testimony regarding the severity of her impairments, including her numbness. The ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). Accordingly, the ALJ did not err in failing to include limitations regarding Plaintiff's numbness.

ORDER - 7

However, the Court finds the ALJ did err in failing to explain the RFC's limitations regarding absenteeism and off task time. The ALJ only considered two medical opinions in this matter: (1) Dennis Koukol's opinion based on his February 2017 review of the record, and (2) William Alto's opinion based on an assessment form completed in December 2013. *Id.* at 67-75, 390-92. Neither opinion addresses how many days of work Plaintiff would miss or how much time she would be off task. The only evidence in the record about these limitations is Plaintiff's testimony, which the ALJ discounted. The ALJ provided no explanation or citations to record evidence in his decision to support these absenteeism and off task findings. Without an explanation and support, the finding appears result-oriented.[3] Courts in this district have criticized this type of assessment. *See, e.g., Hystad v. Berryhill*, C17-1702-RAJ, 2018 U.S. Dist. LEXIS 146572 at *5-6 (W.D. Wash. Aug. 28, 2018) (ALJ accorded some weight to treating physician's opinion plaintiff would be off-task ten percent of a workday, but found plaintiff even more limited due to side effects of long-term pain medication use; finding ALJ explained why the RFC limitation exceeded ten percent, but "no explanation for how he reached the 14 percent figure" and that, without a specific explanation of the record evidence supporting the finding, it "appears result-oriented."); *Seymour v. Berryhill*, C17-5849-JCC-BAT, 2018 U.S. Dist. LEXIS 124645 at *10 (W.D. Wash. Jul. 25, 2018) (instead of citing to specific evidence supporting a finding plaintiff would be off task 10%, as previously directed by the Court, ALJ referred generally to daily activities, without an explanation as to how the activities were linked to the ability to maintain concentration during a workday or how they lead to the finding). Accordingly, the ALJ's RFC determination lacks adequate explanation to show that it is supported by

---

[3] The VE testified that that being off task more than 10% of the time or having ten unexcused absences would preclude employment. AR at 57-58.

ORDER - 8

substantial evidence in the record and is free of legal error. This matter must be remanded for reevaluation of the RFC findings.

Lastly, Plaintiff argues the ALJ erred in finding she had the ability to engage in mental activities equivalent to those required in jobs performed at the SVP-3 level because SVP-3 describes only the amount of time required to learn an occupation, not an assessment of function. (Dkt. # 8 at 7-8.) Plaintiff asserts the ALJ's use of SVP-3 to describe her mental capacity failed to convey specifically what activities she could perform. (*Id.* at 8.) Plaintiff asserts this is harmful error because in making this finding, the ALJ removed task complexity from the hypothetical question presented to the VE, thereby bypassing the VE's expertise regarding whether Plaintiff's job was within the range of her abilities. (Dkt. # 10 at 4.) Plaintiff argues the ALJ should have instead used Reasoning Level that explicitly measures the complexity of job tasks. (*Id.* at 3.)

The Commissioner argues that in addition to defining the amount of time required to learn a job, SVP levels correlate to three skill levels: unskilled, semi-skilled, and skilled, defined in 20 C.F.R. § 404.1568. (Dkt. # 9 at 6-7.) The Commissioner therefore asserts the SVP of a job measures time and measures simplicity and complexity. (*Id.* at 7.)

"'SVP' is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1231, n.4 (9th Cir. 2009). SVP-3 means "over 1 month up to and including 3 months." *Dictionary of Occupational Titles*, Appendix C, p. 1009.

It is clear the ALJ intended to include a limitation regarding Plaintiff's mental activity. Although SVP levels may correlate in some way to a job's skill level, as argued by the

ORDER - 9

Commissioner, the ALJ failed to provide any detail or explanation of what mental activities Plaintiff could perform. By its definition, SVP levels measure the amount of time it would take an individual to learn an occupation. It is not apparent from the ALJ's decision what formed the basis for the SVP-3 limitation or what mental activities this limitation allows her to do. As with the off task and absenteeism limitations, without a specific explanation supporting the mental activities limitation, the RFC formulation appears result-oriented. Because this matter is already being remanded for the ALJ to reevaluate the RFC, the ALJ should provide an adequate explanation regarding Plaintiff's mental functioning, should the ALJ find mental limitations warranted.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate Plaintiff's RFC and proceed to step five as necessary.

Dated this 16th day of October, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge